## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERIC FLEMING,                    )
                                 )
            Plaintiff,           )        CIVIL ACTION NO.
v.                               )
                                 )        _____
BOARD OF REGENTS OF THE          )
UNIVERSITY SYSTEM OF             )
GEORGIA,                         )
                                 )
            Defendant.           )

## COMPLAINT

Plaintiff ERIC FLEMING hereby states claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII") on the grounds stated below.

### *Jurisdiction and Venue*

1.    The Court has original subject-matter jurisdiction pursuant to (a) 28 U.S.C. § 1331 because this action arises under the laws of the United States, (b) 28 U.S.C. § 1337 because this action arises under Acts of Congress regulating commerce, and (c) 42 U.S.C. § 2000e-5(f)(3) because this action is brought under Subchapter VI of Title VII.

2.    Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred in the Northern District of Georgia, Atlanta Division.

### *The Parties*

3.    Plaintiff ERIC FLEMING ("PLAINTIFF") is a citizen of the United States and a resident of Cobb County, Georgia.

4.    Defendant BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA ("DEFENDANT") is a state agency doing business in the Northern District of Georgia with its principal office located at 270 Washington Street SW, Atlanta, Georgia 30334.

5.    DEFENDANT can be served through its Chancellor, Dr. Sonny Perdue, at 270 Washington Street SW, Atlanta, Georgia 30334.

6.    DEFENDANT is subject to the personal jurisdiction of this Court.

### *Compliance With Administrative Prerequisites*

7.    PLAINTIFF has timely complied with all legally required administrative prerequisites before filing this action.

8.    On or about December 13, 2021, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by DEFENDANT on account of PLAINTIFF's sex.

9.    On or about February 3, 2023, the EEOC issued to PLAINTIFF a notice of dismissal and right to sue DEFENDANT.

### *Grounds for this Action*

10.    PLAINTIFF is a Black male.

11.    PLAINTIFF is a former employee of DEFENDANT, who worked for the Georgia Institute of Technology ("Georgia Tech").

12.    Georgia Tech is a public university in Atlanta, Georgia controlled by DEFENDANT.

13.    DEFENDANT is a state agency that governs and manages the University System of Georgia and its member institutions.

14.    In or about September 2021, DEFENDANT hired PLAINTIFF to work as a dishwasher in the kitchen of Georgia Tech's West Village Dining Commons, 523 8th Street, Atlanta, GA.

15.    On or about November 24, 2021, DEFENDANT constructively discharged PLAINTIFF by forcing him to quit his job after he suffered frequent and severe offensive sexual conduct from a co-worker.

16.    From on or about September 2021 to on or about November 24, 2021, PLAINTIFF had been continuously employed by DEFENDANT.

17.    Since at least on or about September 2021 to at least November 2021, DEFENDANT was an "employer" within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

18.    Since at least on or about on or about September 2021 to at least November 2021, DEFENDANT engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

19.    Since at least on or about September 2021 to at least November 2021, DEFENDANT employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 2000e(b) of Title VII.

20.    Since at least on or about on or about September 2021 to at least November 2021, DEFENDANT had more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year within the meaning of 42 U.S.C. § 1981a.

21.    Since at least on or about September 2021 to at least November 2021,  PLAINTIFF had been an "employee" of DEFENDANT within the meaning of 42 U.S.C. § 2000e(f) of Title VII.

22.    During PLAINTIFF's employment by DEFENDANT, PLAINTIFF was 19 years old.

23.    Over a two-month period during PLAINTIFF'S employment at DEFENDANT, he was sexually harassed by Terry Kennedy, a Black co-worker, who worked as a cook in the kitchen of Georgia Tech's West Village Dining Commons, and who appeared to be in his 60s.

24.    Mr. Kennedy's sexual harassment of PLAINTIFF started in early October 2021 and ended on or about November 24, 2021, when PLAINTIFF was forced to quit his job because DEFENDANT refused to take prompt

remedial action after PLAINTIFF complained about the harassment to management.

25.    PLAINTIFF worked the day shift, from 9:00 a.m. to 5:45 p.m., Monday to Wednesday and alternate Saturdays and Sundays.

26.    Mr. Kennedy typically worked the afternoon-to-night shift.

27.    Occasionally, Mr. Kennedy worked the morning-to-afternoon shift.

28.    Mr. Kennedy directed sexually offensive conduct toward PLAINTIFF in Georgia Tech's kitchen at the West Village Dining Commons during working hours.

29.    Mr. Kennedy's sexually offensive conduct toward PLAINTIFF occurred multiple times during each shift that they worked together, multiple days each week.

30.    The sexually offensive conduct that Mr. Kennedy directed at PLAINTIFF includes but is not limited to:

(a)    He admitted to PLAINTIFF that he is gay.

(b)    He frequently asked to have sex with PLAINTIFF.

(c)    He frequently discussed with PLAINTIFF how he liked having sex with Black men.

(d)    He frequently told PLAINTIFF that he likes to watch men having sex.

(e)    He told PLAINTIFF he is attracted to men who look like PLAINTIFF.

(f)    He told PLAINTIFF he likes to "fuck men who have dreds and are light-skinned like you."

(g)    He told PLAINTIFF he wanted to have sex with PLAINTIFF and another man at the same time, as a threesome.

(h)    He told PLAINTIFF he likes to "fuck a lot" and does not care if it is men or women.

(i)    He told PLAINTIFF he has "a big dick."

(j)    He frequently commented on PLAINTIFF's appearance.

(k)    He frequently asked PLAINTIFF about PLAINTIFF's sex life and the kind of people PLAINTIFF "like[s] to fuck" and whether PLAINTIFF likes to have sex with men.

(l)    He asked PLAINTIFF what type of sexual positions PLAINTIFF likes and showed PLAINTIFF how he likes to have sex by thrusting his hips in the air.

31.    DEFENDANT was aware that Mr. Kennedy was sexually harassing PLAINTIFF.

32.    On or about the morning of November 1, 2021, PLAINTIFF complained in person to Chef Winston Allen about Mr. Kennedy's offensive sexual conduct toward PLAINTIFF.

33.    Chef Allen was the Executive Chef and manager over Georgia Tech's kitchen at the West Village Dining Commons.

34.    Chef Allen was a DEFENDANT employee.

35.    However, after PLAINTIFF complained to Chef Allen about Mr. Kennedy's offensive sexual conduct, DEFENDANT failed to take appropriate action and Mr. Kennedy's sexually offensive conduct toward PLAINTIFF continued.

36.    Chef Allen supervised Mr. Kennedy.

37.    Chef Allen supervised PLAINTIFF.

38.    Chef Allen told PLAINTIFF that PLAINTIFF was a floater and would be required to perform various tasks at Chef Allen's direction, in addition to the job duties of a dishwasher.

39.    Throughout PLAINTIFF's employment by DEFENDANT, Chef Allen ordered PLAINTIFF to perform various assignments on a daily basis including, but not limited to:

    (a)    Chef Allen directed PLAINTIFF to clean up food left in the kitchen.

(b)     Chef Allen directed PLAINTIFF to refill the milk dispenser in the cafeteria.

(c)     Chef Allen directed PLAINTIFF to clean the dishes.

(d)     Chef Allen directed PLAINTIFF to break down boxes into flats and take them to the dumpster.

(e)     Chef Allen directed PLAINTIFF to take rotten food and other trash to the dumpster.

(f)     Chef Allen directed PLAINTIFF to collect the trash from each of the food stations in the cafeteria and take it to the dumpster, and pour out any liquid onto the concrete in front of the loading dock.

(g)     Chef Allen directed PLAINTIFF to organize silverware in the kitchen.

(h)     Chef Allen directed PLAINTIFF to clean PLAINTIFF'S sink.

(i)     Chef Allen directed PLAINTIFF to clear the dish-line.

(j)     Chef Allen directed PLAINTIFF to organize and refill the bananas in the cafeteria.

40.     Other than Chef Allen, no other supervisor directed or monitored PLAINTIFF's job duties on a daily basis.

41.     On or about November 1, 2021, after PLAINTIFF complained to Chef  Allen about Mr. Kennedy, Mr. Kennedy continued to direct sexually offensive comments to PLAINTIFF that day.

42.     On or about November 1, 2021, Mr. Kennedy's sexually offensive conduct toward PLAINTIFF triggered an anxiety attack.

43.     PLAINTIFF had been diagnosed with an anxiety disorder when he was in high school.

44.     On or about November 1, 2021, after Mr. Kennedy's sexually offensive conduct toward PLAINTIFF triggered an anxiety attack, at around noon, PLAINTIFF told Chef Allen that he was feeling anxious and needed to leave work.

45.     Chef Winston Allen told PLAINTIFF to notify Michelle Largie, a manager in the office who handled scheduling, that he planned to leave work.

46.     PLAINTIFF then notified Ms. Largie that he was feeling anxious and needed to go home, which she approved.

47.     From November 2 to November 14, 2021, PLAINTIFF remained out of work while recovering from the anxiety caused by Mr. Kennedy's offensive sexual conduct toward him.

48.     On or about November 2, 2021, PLAINTIFF went to a doctor, who treated his anxiety.

49.    PLAINTIFF's doctor issued a doctor's note keeping PLAINTIFF out of work from November 2 to 8, 2021.

50.    On or about November 2, 2021, PLAINTIFF notified Maurice Gibson, a Georgia Tech manager, by text message and telephone voicemail, that PLAINTIFF had seen a doctor who told PLAINTIFF to remain out of work until November 8, 2021.

51.    On or about November 6, 2021, while resting at home, PLAINTIFF continued to experience anxiety as a result of Mr. Kennedy's sexually offensive conduct toward PLAINTIFF in the workplace.

52.    PLAINTIFF'S anxiety triggered an asthma attack, causing PLAINTIFF to go to a hospital emergency room that night.

53.    On or about November 9, 2021, PLAINTIFF notified Mr. Gibson, the Georgia Tech manager, by text message, that PLAINTIFF would remain out of work because PLAINTIFF still was not feeling well, which Mr. Gibson approved.

54.    On or about November 12, 2021, PLAINTIFF'S mother sent an email to Mr. Gibson, explaining that PLAINTIFF had "suffered an asthma attack due to the stress and anxiety he has been under from work and had to be rushed to the ER," and that PLAINTIFF would be returning to work on November 15, 2021.

55.    PLAINTIFF's mother's email to Mr. Gibson had attached copies of three doctor's notes issued on PLAINTIFF's behalf:

(a)    a note issued by Dr. Erika Van Putten, excusing PLAINTIFF from work from 11/2 to 11/8/21;

(b)    a note issued by Wellstar's emergency department excusing PLAINTIFF from work until 11/8/21; and

(c)    a note issued by Dr. Erika Van Putten excusing PLAINTIFF from work from 11/9 to 11/12/21.

56.    PLAINTIFF returned to work on or about November 15, 2021.

57.    After PLAINTIFF returned to work, DEFENDANT failed to investigate PLAINTIFF's mother's assertion to Mr. Gibson that PLAINTIFF was experiencing stress and anxiety as a result of working for DEFENDANT.

58.    Between on or about November 15, 2021 and November 23, 2021, Mr. Kennedy continued to direct offensive sexual comments to PLAINTIFF during every shift that they worked together.

59.    On or about November 23, 2021, Mr. Kennedy commented to PLAINTIFF that he thought PLAINTIFF was an attractive guy.

60.    PLAINTIFF told him that he finds most people ugly, which seemed to upset Mr. Kennedy.

61.    On or about November 24, 2021, Mr. Kennedy poured charcoal in PLAINTIFF's sink, which was inappropriate, and which PLAINTIFF considered an aggressive act toward him.

62.    PLAINTIFF complained to Chef Allen that someone had poured charcoal in his sink.

63.    Chef Allen ordered PLAINTIFF to clean up the charcoal in his sink.

64.    A few seconds after Chef Allen ordered PLAINTIFF to clean up the charcoal in his sink, Mr. Kennedy admitted to PLAINTIFF – in the presence of Chef Allen – that Mr. Kennedy had poured the charcoal in his sink.

65.    Mr. Kennedy then got loud and physically aggressive with PLAINTIFF, which Chef Allen observed.

66.    Chef Allen took no action against Mr. Kennedy for pouring charcoal in PLAINTIFF"s sink or for getting loud and physically aggressive with PLAINTIFF.

67.    Mr. Kennedy's loud and physically aggressive conduct toward PLAINTIFF triggered an anxiety attack.

68.    PLAINTIFF then contacted his mother, who came to PLAINTIFF's place of work around 4:00 p.m.

69.    PLAINTIFF's mother approached Chef Allen and told him that he had ignored PLAINTIFF's complaints of sexual harassment.

70.    PLAINTIFF then told Chef Allen that he quit.

71.    DEFENDANT forced PLAINTIFF to quit his job because it refused to take prompt remedial action after PLAINTIFF complained to management about Mr. Kennedy sexually harassing him.

72.    PLAINTIFF found the sexually offensive and aggressive conduct that Mr. Kennedy directed at him to be humiliating, intimidating, threatening and emotionally distressing, and it interfered with PLAINTIFF's ability to do his job.

73.    PLAINTIFF was scared to go to work because he would have to face Mr. Kennedy and his outrageous sexually offensive conduct.

74.    Mr. Kennedy's offensive and aggressive conduct caused PLAINTIFF to lose sleep, made him depressed, gave him anxiety, and caused PLAINTIFF to seek medical treatment.

75.    DEFENDANT's procedures for reporting sexual harassment do not require an employee to complain to any specific individual.

76.    DEFENDANT's Equal Opportunity, Nondiscrimination, and Anti-Harassment Policy states in relevant part:

**Reporting Discrimination and/or Retaliation**

Individuals who believe that they have been subjected to discrimination, including discriminatory harassment, and/or retaliation (the Complainant) should promptly report the matter to one of the following offices:

Complaints against non-faculty employees should be filed with Georgia Tech Human Resources **Employee Relations** or (404-894-4847).

* * *

All complaints may also be filed with Georgia Tech's **EthicsPoint** website.

* * *

**Additional Reporting Options for Reporting Sexual Discrimination**

In addition to the reporting options above, alleged sexual discrimination/sexual misconduct may be reported to the Title IX Coordinator or one of the Deputy Title IX Coordinators. See Georgia Tech's **Title IX** website for more information on reporting and resources for victims of sexual misconduct.

77.    DEFENDANT's Ethics Policy states in relevant part:

**Refrain from discriminating against, harassing or threatening others.**

The USG Statement of Core Values emphasizes the "inherent dignity and rights of every person and … our resulting responsibility to treat each person with fairness, compassion and decency." As such, any form of discrimination or harassment is inconsistent with USG core values….

Sexual harassment of members of the USG community or students in the USG is prohibited and shall subject the offender to dismissal or other sanctions after compliance with procedural

due process requirements. Unwelcome sexual advancements, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when: … (C) Such conduct unreasonably interferes with an individual's work or academic performance or creates an intimidating, hostile or offensive working or academic environment.

* * *

**Report wrongdoing to the proper authorities; refrain from retaliating against those who do report violations; and cooperate fully with authorized investigations.**

All members of the USG community have a responsibility to follow university policies and procedures, adhere to applicable laws and regulations and speak up when they see or suspect misconduct. Members of the USG community with concerns about possible unethical behavior or noncompliance with Board of Regents policy are encouraged to speak to their supervisor or to use the Ethics and Compliance Hotline.

78.    PLAINTIFF appropriately used DEFENDANT's procedure for reporting sexual harassment when he reported Mr. Kennedy's sexually offensive behavior to Chef Allen, PLAINTIFF's supervisor.

79.    Chef Allen had the power to instruct Mr. Kennedy to cease harassing behavior toward co-workers.

80.    DEFENDANT had actual knowledge of Mr. Kennedy's harassment when PLAINTIFF complained to Chef Allen about Mr. Kennedy's offensive sexual conduct.

81.    Prior to November 24, 2021, DEFENDANT had never provided sexual harassment training to Chef Allen.

82.    Prior to November 24, 2021, DEFENDANT had never provided sexual harassment training to PLAINTIFF.

83.    DEFENDANT discriminated against PLAINTIFF because of his sex with respect to creating and subjecting PLAINTIFF to a sexually hostile work environment and other terms, conditions and benefits of employment, in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

84.    DEFENDANT discriminated against PLAINTIFF because of his sex with respect to constructively discharging PLAINTIFF and other terms, conditions and benefits of employment, in violation of Title VII, 42 U.S.C. § 2000e *et seq*., by forcing PLAINTIFF to quit his job after DEFENDANT failed to take prompt and appropriate remedial action to remedy or stop Mr. Kennedy's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF.

85.    DEFENDANT ratified Mr. Kennedy's outrageous sexually offensive and unwelcomed conduct toward PLAINTIFF by failing to take appropriate remedial action to remedy or stop Mr. Kennedy's conduct.

## ***CLAIMS AGAINST THE DEFENDANT***

### **Count 1**
### ***42 U.S.C. § 2000e-2(a)(1)***
### **(Sexually Hostile Work Environment)**

86.    Paragraphs 1-85 above are re-alleged and incorporated by reference as if fully set forth herein.

87.    By engaging in the conduct described above in Paragraphs 22-82, DEFENDANT unlawfully discriminated against PLAINTIFF because of his sex with respect to creating a sexually hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment, all in violation of Title VII.

88.    As a result of DEFENDANT's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

89.    PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, and all in an amount to be determined as specified by law.

90.    PLAINTIFF's sex was a motivating factor in DEFENDANT's decision to create a sexually hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

91.    Alternatively, DEFENDANT, motivated in part by PLAINTIFF's sex and motivated in part by other reasons, discriminated against PLAINTIFF in violation of Title VII with respect to creating a sexually

hostile work environment for PLAINTIFF and other terms, conditions and benefits of employment.

**Count 2**
*42 U.S.C. § 2000e-2(a)(1)*
**(Sex Discrimination – Constructive Discharge)**

92.    Paragraphs 1-85 above are re-alleged and incorporated by reference as if fully set forth herein.

93.    By engaging in the conduct described above in Paragraphs 22-82, DEFENDANT unlawfully discriminated against PLAINTIFF because of his sex with respect to constructively discharging PLAINTIFF and other terms, conditions and benefits of employment, all in violation of Title VII.

94.    As a result of DEFENDANT's unlawful actions, PLAINTIFF has suffered and is continuing to suffer injury including, but not limited to, incurring pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

95.    PLAINTIFF seeks compensatory, punitive, and nominal damages, pre-judgment and post-judgment interest, declaratory and injunctive relief, and reasonable attorney's fees and costs of this action, all through the date of entry of a final non-appealable judgment, all pursuant to Title VII, and all in an amount to be determined as specified by law.

96.     PLAINTIFF's sex was a motivating factor in DEFENDANT's decision to constructively discharge PLAINTIFF and other terms, conditions and benefits of employment.

97.     Alternatively, DEFENDANT, motivated in part by PLAINTIFF's sex and motivated in part by other reasons, discriminated against PLAINTIFF in violation of Title VII with respect to constructively discharging  PLAINTIFF and other terms, conditions and benefits of employment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff ERIC FLEMING respectfully prays that this Court enter judgment in favor of PLAINTIFF and against DEFENDANT for:

A.     Lost wages, employment benefits, and other compensation to which PLAINTIFF is entitled, pursuant to Title VII and 42 U.S.C. § 1981a.

B.     Compensatory damages including, but not limited to, pecuniary losses, emotional pain, suffering, and inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries to which PLAINTIFF is entitled, pursuant to Title VII and 42 U.S.C. § 1981a.

D.     All reasonable attorney's fees and costs of the action through entry of a final non-appealable judgment, pursuant to Title VII and 42 U.S.C. § 1981a including all reasonable attorney's fees and costs for:

(1)    the time spent plus costs reasonably incurred throughout this action relating to the claims of PLAINTIFF under Title VII;

(2)    the time spent litigating both the entitlement to and amount of attorney's fees and costs incurred throughout this action plus costs of investigation and litigation reasonably incurred relating to the claims of PLAINTIFF under Title VII, whether in connection with any settlement, compromise, any accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58;

(3)    the time spent litigating the fairness and reasonableness of any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58, and

(4)    the time spent explaining to PLAINITFF any settlement, compromise, or accepted offer of judgment under Fed. R. Civ. P. 68 or any other form of judgment entered pursuant to Fed. R. Civ. P. 54-58.

E.    Pre-judgment and post-judgment interest on all amounts awarded pursuant to Title VII and 42 U.S.C. § 1981a, including lost compensation, litigation expenses including attorney's fees, costs, and costs of investigation and litigation of this action.

F.     A declaration that DEFENDANT engaged in unlawful employment practices with respect to PLAINTIFF in violation of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-2(m), and 42 U.S.C. § 1981a.

G.     Inclusion in PLAINTIFF's personnel file of the operative complaint and any favorable verdict in this action.

H.     All such other legal and equitable relief to which PLAINTIFF is entitled as a matter of law and equity.

I.     All such other and further relief as is deemed just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

**Plaintiff demands a jury trial on all issues triable of right by a jury.**

Respectfully submitted,

**/s/ *Alan H. Garber***

ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648
(678) 560-6685
(678) 560-5067 (facsimile)

***Attorneys for the Plaintiff***